L7NKKEGP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

UNITED STATES OF AMERICA,

       v.                       20 CR 160 (MKV)
                               Remote Conference

MICHAEL KEGLEY, JR.,

              Defendant.

------------------------------x

                             New York, N.Y.
                             July 23, 2021
                             9:07 a.m.

Before:

                 HON. MARY KAY VYSKOCIL,

                             District Judge

                    APPEARANCES

AUDREY STRAUSS,
    United States Attorney for the
    Southern District of New York
SARAH MORTAZAVI
    Assistant United States Attorney

SCOTT C. COX
    Attorney for Defendant

L7NKKEGP

1          (The Court and all parties appearing telephonically)

2          (Case called)

3          THE DEPUTY CLERK:  Counsel, starting with the

4    government, please state your name for the record.

5          MS. MORTAZAVI:  Good morning, your Honor.  This is

6    Sarah Mortazavi, for the government.

7          THE COURT:  Good morning, Ms. Mortazavi.

8          MR. COX:  Good morning, your Honor.  I am Scott Cox,

9    on behalf of Michael Kegley, Jr., and he is here with me,

10   sitting to my left.

11         THE COURT:  All right.  Good morning, Mr. Cox, and

12   good morning, Mr. Kegley.

13         To the defendant's side, I'm seeing half of each of

14   you, so can you either move yourselves back or move the

15   computer further away from you?

16         That's better.  Thank you.

17         I still can't fully see Mr. Kegley.

18         MR. COX:  Come over closer.  You're the most

19   important.

20         Better?

21         THE COURT:  Yes, that's true.

22         Better, yes.

23         So, good morning, everyone.  It's the Court's

24   understanding that we are here for a change of plea hearing

25   this morning for Mr. Kegley.  I've been informed that the

L7NKKEGP

1    defendant wishes to waive indictment and to plead guilty to a

2    one-count superseding information.

3                We have a court reporter with us today, Mr. Walker.

4    Are you able to hear me clearly?

5                (Pause)

6                THE COURT:  Good morning.  Thank you.

7                And you can hear counsel and Mr. Kegley as well?

8                (Pause)

9                THE COURT:  All right.  Thank you.

10               Mr. Kegley, before we go any further, are you able to

11   speak and to understand English clearly?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  You do not require the services of an

14   interpreter?

15               THE DEFENDANT:  No, your Honor.

16               THE COURT:  All right.

17               For the record, then, counsel are appearing before me

18   by videoconference.  The defendant, Mr. Kegley, is also

19   appearing before me and participating by videoconference.

20               Let me just confirm with counsel as well.

21   Ms. Mortazavi and Mr. Cox, are you able to hear me and all the

22   other participants clearly?

23               MS. MORTAZAVI:  Yes, your Honor.

24               MR. COX:  Yes, your Honor.

25               THE COURT:  All right.  Thank you.

L7NKKEGP

1          So, Mr. Kegley, if at any point, you're not able to

2     hear me or any of the participants, please let me know that,

3     and we will try to deal with whatever technological issues we

4     are having.

5          In addition, if at any point during today's

6     proceeding, you wish to pause and to speak with Mr. Cox in

7     private, please let us know that, and we will take a break and

8     give you the opportunity to consult with your lawyer.

9          Will you do that, sir?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  Thank you.

12          So, needless to say, we remain subject to restrictions

13     as a result of the COVID-19 pandemic, and I am, therefore,

14     conducting this proceeding pursuant to the authority provided

15     by Section 15002 of the CARES Act and standing orders issued by

16     our chief judge pursuant to that act.  The CARES Act provides

17     that a court may conduct a felony plea proceeding by

18     videoconference on two conditions:  One, when the chief judge

19     of the district orders that proceedings cannot be conducted in

20     person without seriously jeopardizing public health and safety;

21     and, two, when the district judge in a particular case — here,

22     that's me — finds that, for specific reasons, the plea in that

23     case should not be further delayed without serious harm to the

24     interests of justice.

25          By standing order dated June 15, 2021, our chief

L7NKKEGP

judge, Laura Taylor Swain, found that felony pleas cannot be

conducted in person without seriously jeopardizing public

health.

        Before today's proceeding, the government filed a

proposed order and sealed the affirmation with the Court by

email, and, in that communication, the government requested

that today's proceedings not be delayed.  The letter states

that Mr. Kegley's interests in expeditiously resolving the

charges against him, as well as the escalated risk to him of

traveling to New York for this proceeding in light of the

COVID-19 pandemic, constitute specific reasons that this

proceeding cannot be delayed without seriously harming the

interests of justice.

        Are there any other reasons that any party wishes to

put on the record why this proceeding cannot be delayed?

        Ms. Mortazavi?

        MS. MORTAZAVI:  Nothing beyond what was in our letter,

your Honor.

        THE COURT:  Thank you.

        Mr. Cox?

        MR. COX:  No, thank you, your Honor.

        THE COURT:  All right.

        The Court does find additional grounds that proceeding

with this plea hearing, in addition to the reasons stated in

the government's letter, would promote judicial economy and

L7NKKEGP

1    avoid a further backlog of cases in the federal system and the

2    anticipated influx of requests for hearings once in-person

3    proceedings can safely resume.  So, for the reasons stated by

4    counsel and the additional reasons that I have just stated, I

5    do find that this proceeding cannot be delayed without harm to

6    the interests of justice.

7            I've also received a consent to proceed by

8    videoconference and a written waiver of Mr. Kegley's right to

9    be present before me in open court for a plea hearing.  I have

10   some questions that I need to ask, to make a record, in order

11   to confirm, Mr. Kegley, that you do, in fact, understand that

12   you have a right to appear before me in open court, that you

13   are knowingly and voluntarily waiving that right, and that you

14   consent to, instead, proceed with today's plea hearing by

15   videoconference.

16           So, let me first ask you, Mr. Cox, can you describe

17   for me how the documents that you've submitted to me — a waiver

18   of a right to be present at arraignment and a guilty plea,

19   which is filed at ECF 418-2, and a consent to proceed by

20   videoconference, filed at 3418-1 — how were they provided to

21   Mr. Kegley?  Did you explain to him that he had a right to be

22   present in open court to change his plea in this case?  Do you

23   believe, based on your conversation with him, that he knows and

24   understands his rights and is voluntarily waiving those rights?

25           MR. COX:  Yes, your Honor, thank you very much.

L7NKKEGP

1          Judge, I live and work in Louisville, and Mr. Kegley

2     lives in Lexington, so we talk on the phone and email documents

3     back and forth.  And so I emailed him the two forms that you're

4     referencing, and then we got on the phone and went through

5     those forms line by line and word by word, your Honor, I

6     answered all of the questions that he had about either

7     document, I explained to him that he had a legal right to

8     appear in New York in front of you in person, and I also told

9     him that I was quite confident he would be sentenced by you in

10    person.  And after explaining all of that, and answering all of

11    his questions, he signed those documents while we were on the

12    phone, your Honor, and then emailed them to me, and I, in turn,

13    signed them and forwarded them on to the government.

14          THE COURT:  All right.  Mr. Cox, is that your

15    signature on each of the waiver of right to be present at

16    arraignment and the consent to proceed by videoconference?

17          MR. COX:  Yes, your Honor.

18          THE COURT:  All right.

19          Mr. Kegley, do you have copies of these two documents

20    before you?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  All right.

23          Is that your signature on each of the two documents?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Did you read the waiver of your right to

L7NKKEGP

1    be present and the consent to proceed by videoconference before

2    you signed them?

3                THE DEFENDANT:  Yes, your Honor.

4                THE COURT:  Do you understand that you have a right to

5    be before me in open court?

6                THE DEFENDANT:  Yes, your Honor.

7                THE COURT:  Are you voluntarily waiving that right?

8                THE DEFENDANT:  Yes, your Honor.

9                THE COURT:  Did you have a full opportunity to discuss

10   your rights and the waiver of those rights with Mr. Cox before

11   you signed the form?

12               THE DEFENDANT:  Yes, your Honor.

13               THE COURT:  And do you, in fact, consent to proceed

14   today by videoconference rather than in open court?

15               THE DEFENDANT:  Yes, your Honor.

16               THE COURT:  All right.

17          I do find that Mr. Kegley has knowingly and

18   voluntarily waived his right to appear in open court for

19   today's change of plea hearing, and I will accept his waiver

20   and consent, I'll endorse those two documents, and they will be

21   filed as endorsed on the public docket.

22          Now, my understanding of what we're going to do today

23   is that defendant wishes to withdraw his plea of not guilty

24   and, pursuant to an agreement with the government, waive

25   indictment, and, instead, be prosecuted by information, and he

L7NKKEGP

1    will be entering a plea of guilty to the one count in that

2    superseding information.

3              Is that correct, Mr. Cox?

4              MR. COX:  Yes, your Honor.

5              THE COURT:  All right.

6              Ms. Mortazavi, that's consistent with your

7    understanding?

8              MS. MORTAZAVI:  Yes, it is.

9              THE COURT:  Count One of the superseding information

10   charges the defendant with drug adulteration and misbranding of

11   drugs, in violation of Title 21, United States Code,

12   Section 331 and 333(a)(2).  In particular, the government

13   alleges that Mr. Kegley marketed and distributed in interstate

14   commerce misbranded and adulterated drugs to trainers and

15   veterinarians of thoroughbred racehorses in an effort to assist

16   those trainers and veterinarians to improve the performance of

17   racehorses through the administration of such misbranded and

18   adulterated drugs while avoiding detection of that scheme by

19   federal and state drug regulators.

20             Is that correct, Ms. Mortazavi?

21             MS. MORTAZAVI:  That is correct, your Honor.

22             THE COURT:  And that is the defendant's understanding,

23   Mr. Cox?

24             MR. COX:  Yes, your Honor.

25             THE COURT:  All right.

L7NKKEGP

1          And the plea today is to be entered pursuant to a plea

2   agreement, correct?

3          MR. COX:  Yes, ma'am.

4          THE COURT:  All right.

5          Before we proceed to the substance today, I actually

6   have -- I've never had this happen before, but I have several

7   questions about that plea agreement that I'd like to address

8   with counsel first.

9          So, Ms. Mortazavi and Mr. Cox, would you pull that

10  agreement out.

11         And we'll mark that agreement, by the way, as

12  Government Exhibit 1.

13         MS. MORTAZAVI:  Certainly, your Honor.  I have the

14  agreement.

15         THE COURT:  Mr. Cox, do you have it in front of you?

16         MR. COX:  I do, your Honor.

17         THE COURT:  All right.

18         So, specifically, Ms. Mortazavi, I think this really

19  is addressed to you.  In the very first paragraph, you say

20  Count One charges the defendant, and then you have the

21  specifics, and you say "in violation of Title 21, United States

22  Code, Section 331 and 332(a)(2)."  I think you mean 333; is

23  that correct?

24         MS. MORTAZAVI:  That's correct, your Honor.  I

25  apologize for that.

L7NKKEGP

1          THE COURT:  Not a problem.

2          So, it's 333(a)(2), which is the provision that

3    specifies the relevant penalty, correct?

4          MS. MORTAZAVI:  That's correct, your Honor.  And

5    that's consistent with the superseding information, so I do

6    believe it is just a typo.

7          THE COURT:  All right.  Let me find the other two

8    issues, though.

9          So where you talk about the maximum penalties, you say

10   the maximum term of supervised release is three years.  That

11   continues right after where we're looking.

12         MS. MORTAZAVI:  Yes, your Honor.

13         THE COURT:  But it's the Court's understanding that

14   because the statutory maximum for this crime is three years,

15   this is a Class E felony, which means that the maximum term of

16   supervised release should be one year.  Is that correct?

17         MS. MORTAZAVI:  Your Honor, I would have to

18   double-check that.  I have no reason to question the Court on

19   this, but I would want a minute or two to just check the

20   statute.

21         THE COURT:  Mr. Cox, let me see if you have a

22   reaction.  If not, let me tell you my second issue, and then

23   I'm going to give both counsel an opportunity to look at this

24   because we really ought to have this clear before we proceed.

25         MR. COX:  I agree with you, your Honor, and I'd also

L7NKKEGP

1    like to take a look.

2              THE COURT:  All right.

3              So, the second issue that I want to flag for you is

4    that it deals with the maximum fine that you specify.  So it's

5    the Court's understanding that while the indictment alleges a

6    conspiracy, which would have the maximum fines that you

7    specified here, the information charges Mr. Kegley with a

8    standalone violation of the adulteration provisions, and that,

9    as I understand it, would only -- would carry a maximum fine of

10   $10,000, or twice the gain or loss, not 250,000.

11             MS. MORTAZAVI:  And that, too, your Honor, if I could

12   have a few minutes to look --

13             THE COURT:  Yes, you both should take a few minutes,

14   but we really need to get this clear before we proceed.

15             MS. MORTAZAVI:  Certainly.  And I don't think it

16   should take long, your Honor.  If we could reconvene at 9:30,

17   I'm sure the government can find this information and speak to

18   Mr. Cox.

19             THE COURT:  All right.  That works for the Court.

20             MR. COX:  Thank you, Judge.

21             THE COURT:  Mr. Cox, is that acceptable to you?

22             MR. COX:  It is, your Honor.

23             And just as a practical matter, we sign off or just

24   continue to be signed on the way we are?

25             THE COURT:  Ms. Dempsey, what do you recommend?

L7NKKEGP

1          THE DEPUTY CLERK:  I'm going to keep this open, I'm

2      not going to sign out and sign back on, so everybody can just

3      mute their cameras and their microphones if they want.

4          THE COURT:  I can stop my camera and mute things, and

5      I don't know how the two of you should speak with each other,

6      but since I'm going to mute things, presumably, I can walk

7      away, or you can pick up a phone and talk to each other, I

8      don't know.

9          MS. MORTAZAVI:  Your Honor, I'll turn off my camera

10     and microphone and speak with Mr. Cox on our cell phones.

11         THE COURT:  Okay.  That makes sense.

12         MR. COX:  Thank you, Judge.

13         THE COURT:  Let Ms. Dempsey know when you're ready to

14     resume, I will log back on.

15         MR. COX:  Thank you.

16         MS. MORTAZAVI:  Thank you.

17         THE DEPUTY CLERK:  Sign back on, I'll have it

18     available, and I'll let the judge know we're ready.

19         MR. COX:  Thank you.

20         MS. MORTAZAVI:  Thank you.

21         (Recess)

22         THE COURT:  All right.  I am told that we are ready to

23     resume.  Is that correct?

24         MR. COX:  Yes, your Honor.

25         THE COURT:  All right.  Ms. Mortazavi or Mr. Cox,

L7NKKEGP

1  where are we at?

2  MS. MORTAZAVI:  So, your Honor, we've both looked at

3  the relevant statutes, and I've spoken with Mr. Cox.  Our

4  preference at the moment -- first of all, the Court is correct,

5  that those amendments need to be made to the plea agreement,

6  and our request is that the Court, if it is possible, amend

7  this document by hand, and the parties have already orally

8  agreed to those changes to the plea agreement, and we'll

9  memorialize it either by obtaining a copy from the Court that

10  we will each initial and keep in our records or through

11  executing a new document.

12  THE COURT:  Mr. Cox, are you in agreement?

13  MR. COX:  Yes, I am, your Honor.

14  THE COURT:  All right.

15  Let me just say, first, Mr. Cox, it shouldn't be the

16  Court's job to discover two errors that worked in your client's

17  favor.  It really is part of your job to have discovered that.

18  In any event, I'm glad that we caught them before we

19  proceeded.  I will annotate the copy that I have to make these

20  edits and change the statutory citation that I first referenced

21  to you from 332(a)(2) to 333(a)(2), the maximum term of

22  supervised release to a term of one year, and the maximum fine

23  to be $10,000, or the gain or loss, but I would like for the

24  parties to replace this with a revised plea agreement shortly

25  after we conclude today.

1          MR. COX:  Yes, your Honor.

2          THE COURT:  All right.  Thank you.

3          MS. MORTAZAVI:  We will do so, your Honor.

4          THE COURT:  All right.  Thank you.

5          So, Mr. Kegley, before we proceed with my acceptance

6    of your plea, I need to ask you a number of questions.  You

7    need to be under oath while I do that.  And the reason for

8    these questions is for me to assure myself that your plea is,

9    in fact, a valid plea.  I may at times cover a point more than

10   once, and I may cover matters that were addressed in the

11   various forms and agreements that you have signed.  If I do

12   that, the reason is because it is very important that you

13   understand what's happening today.  So I just remind you again,

14   if you do not hear me, and, for that matter, if you do not

15   understand something that I'm asking you, please say so, and I

16   will try to reword my questions or give you the opportunity to

17   speak with Mr. Cox, should you wish to do so.

18          Will you do that, please?

19          THE DEFENDANT:  I will, yes, your Honor.

20          THE COURT:  All right.  Thank you.

21          So, Ms. Dempsey, would you please administer the oath

22   to Mr. Kegley.

23          (Defendant sworn)

24          THE COURT:  Mr. Kegley, do you understand that you

25   have solemnly promised to tell the truth, and that if you

L7NKKEGP

1  answer any of my questions falsely, your false or untrue

2  answers may later be used against you in another prosecution

3  for perjury or making a false statement?

4           THE DEFENDANT:  I understand, your Honor.

5           THE COURT:  All right.

6           Can you tell me, sir, how old are you?

7           THE DEFENDANT:  Forty-one years old.

8           THE COURT:  And how far have you gone in school?

9           THE DEFENDANT:  Some college.

10          THE COURT:  And you've told me that you do speak and

11  understand English perfectly well?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Are you a United States citizen, sir?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  Were you born here, or were you

16  naturalized?

17          THE DEFENDANT:  Born here.

18          THE COURT:  Are you under the care presently of a

19  medical doctor?

20          THE DEFENDANT:  Yes, your Honor.

21          THE COURT:  All right.  For what condition, can you

22  tell me?

23          THE DEFENDANT:  Cardiac condition.

24          THE COURT:  Is that a chronic condition?

25          THE DEFENDANT:  Yes, your Honor.

L7NKKEGP

| | |
|---|---|
| 1 | THE COURT:  Have you recently, or are you now, under |
| 2 | the care of any mental health professionals? |
| 3 | THE DEFENDANT:  No, your Honor. |
| 4 | THE COURT:  Have you ever been treated or hospitalized |
| 5 | for any mental illness or any type of addiction, including |
| 6 | drugs or alcohol? |
| 7 | THE DEFENDANT:  No, your Honor. |
| 8 | THE COURT:  Have you ever been addicted to drugs or |
| 9 | alcohol? |
| 10 | THE DEFENDANT:  No, your Honor. |
| 11 | THE COURT:  In the past 24 hours, have you taken any |
| 12 | drugs, any medicines, any pills? |
| 13 | THE DEFENDANT:  Yes, your Honor. |
| 14 | THE COURT:  Can you tell me, please, what you have |
| 15 | taken. |
| 16 | THE DEFENDANT:  The name for high blood pressure, for |
| 17 | my cardiac, they're Metoprolol and irbesartan. |
| 18 | THE COURT:  And that's the only medication you're |
| 19 | taking for your high blood pressure and cardiac condition? |
| 20 | THE DEFENDANT:  Yes, your Honor. |
| 21 | THE COURT:  All right. |
| 22 | In the past 24 hours, have you had any alcohol to |
| 23 | drink? |
| 24 | THE DEFENDANT:  No, your Honor. |
| 25 | THE COURT:  Is your mind clear today? |

L7NKKEGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Are you feeling physically well?  Are you

3     healthy today?

4          THE DEFENDANT:  I am, yes, your Honor.

5          THE COURT:  And are you represented by counsel?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  Who is your counsel?

8          THE DEFENDANT:  Scott Cox.

9          THE COURT:  And are you satisfied with Mr. Cox's

10     advice to you and his representation of you?

11          THE DEFENDANT:  I am, your Honor.

12          THE COURT:  Do either counsel have any doubt as to

13     Mr. Kegley's competence to plead at this time?

14          Ms. Mortazavi?

15          MS. MORTAZAVI:  No, your Honor.

16          THE COURT:  Mr. Cox?

17          MR. COX:  No, your Honor.

18          THE COURT:  All right.  Thank you.

19          Mr. Kegley, as I said before, your attorney has told

20     me that you wish to withdraw your plea of not guilty to the

21     charges in the indictment, to waive indictment, and to enter a

22     plea of guilty to the sole count in a superseding information.

23          Is that your wish?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  Have you fully discussed your case with

L7NKKEGP

1    Mr. Cox, including the process today, the charge to which you

2    intend to enter a plea of guilty, and any possible defenses to

3    that charge?

4              THE DEFENDANT:  I have, your Honor.

5              THE COURT:  Have you discussed the consequences of

6    entering a plea of guilty?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Are you satisfied with the advice that you

9    have received from your counsel in that regard and his

10   representation of you?

11             THE DEFENDANT:  I am.

12             THE COURT:  On the basis of Mr. Kegley's responses to

13   my questions and my observation of his demeanor, I do find that

14   he's fully competent to enter an informed plea at this time.

15             Now, Mr. Kegley, before we turn to the plea itself, I

16   want to be certain that you understand that you're giving up

17   certain rights by waiving indictment in this case.  So, the

18   document that contains the charge to which I understand you

19   wish to plead guilty is called an information.  That's a

20   document that's issued by the office of the United States

21   Attorney for the Southern District.  You have a constitutional

22   right to be charged by an indictment rather than an

23   information, and an indictment is a charge issued by a grand

24   jury.

25             Do you understand that?

L7NKKEGP

1          THE DEFENDANT:  I do, your Honor.

2          THE COURT:  Have you had a full opportunity to discuss

3    that with Mr. Cox?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  I have before me a document signed -- it

6    appears signed by Mr. Kegley and by Mr. Cox.  It's not dated.

7    That document says the above-named defendant, who's accused of

8    one count of violating Title 21, United States Code,

9    Sections 331 and 333, and Title 18, United States Code,

10   Section 2, being advised of the nature of the charges and of

11   his rights, hereby waives in open court prosecution by

12   indictment and consents that the proceeding may be by

13   information instead of indictment.

14         Do you have that document in front of you, Mr. Kegley?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Is that your signature on the document?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  And did you review this with Mr. Cox

19   before you signed it?

20         THE DEFENDANT:  I did.

21         THE COURT:  Mr. Cox, is that your signature on the

22   document?

23         MR. COX:  Yes, your Honor.

24         THE COURT:  Let me ask as a preliminary matter, as I

25   read this, this document says that you waive in open court.

L7NKKEGP

| | |
|---|---|
| 1 | Obviously, we're not in open court.  Do you each consent to my |
| 2 | striking those words from this document and initialing it? |
| 3 | MR. COX:  Yes, your Honor. |
| 4 | THE COURT:  Mr. Kegley? |
| 5 | THE DEFENDANT:  Yes, your Honor. |
| 6 | THE COURT:  All right. |
| 7 | And, as I say, the document is not dated.  Can you |
| 8 | tell me, gentlemen, when did you sign this document? |
| 9 | MR. COX:  July 14th, your Honor. |
| 10 | THE COURT:  All right. |
| 11 | If you would, Mr. Cox, would you please send me a new |
| 12 | version in which you strike those words, "in open court," and |
| 13 | add the date? |
| 14 | MR. COX:  Yes, your Honor. |
| 15 | THE COURT:  And we will file that on the docket once |
| 16 | the information is filed. |
| 17 | MR. COX:  Yes, your Honor. |
| 18 | THE COURT:  All right.  Thank you. |
| 19 | So, Mr. Kegley, do you understand that if you do not |
| 20 | waive indictment, if the government wants to prosecute you on |
| 21 | the facts and charges that are in the information, it would |
| 22 | have to present that case to a grand jury, which might or might |
| 23 | not indict you on the charges? |
| 24 | Do you understand that? |
| 25 | THE DEFENDANT:  I do, your Honor. |

L7NKKEGP

1          THE COURT:  And you understand that you're under no

2     obligation to waive indictment, correct?

3          THE DEFENDANT:  Yes, ma'am.

4          THE COURT:  And do you understand that by signing this

5     waiver of indictment document, you've given up your right to

6     have the case presented to a grand jury?

7          THE DEFENDANT:  I understand.

8          THE COURT:  And do you understand what a grand jury

9     is, sir?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  Have you discussed that with Mr. Cox?

12          THE DEFENDANT:  I have.

13          THE COURT:  All right.

14          And you understand that a grand jury is made up of 23

15     people, of which at least 16 have to be present to conduct

16     business, and you cannot be charged unless at least 12 of these

17     people vote to indict?

18          You understand that, right?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  Did anyone make any threats or promises to

21     you in order to get you to waive indictment in this case?

22          THE DEFENDANT:  No, your Honor.

23          THE COURT:  Have you seen a copy of the superseding

24     information?

25          THE DEFENDANT:  I have.

L7NKKEGP

1        THE COURT:  All right.

2        Have you read that document?

3        THE DEFENDANT:  Yes, your Honor.

4        THE COURT:  Did you discuss it with Mr. Cox?

5        THE DEFENDANT:  I did.

6        THE COURT:  Do you understand the charge against you

7   that's laid out, the charges that are laid out in this

8   superseding information?

9        THE DEFENDANT:  Yes, your Honor.

10        THE COURT:  Mr. Kegley, I can read the superseding

11   information out loud now, if you would like me to do so, or you

12   can waive public reading.  Would you like me to read it, or do

13   you waive public reading?

14        THE DEFENDANT:  I waive public reading.

15        THE COURT:  All right.

16        I do find that Mr. Kegley has knowingly and

17   voluntarily waived indictment and agreed to proceed by way of

18   information.  I will accept the information and the waiver, and

19   it is so ordered that we will proceed pursuant to that

20   information.

21        Now, Mr. Kegley, before I accept a plea from you, I

22   need to ask you certain questions, additional questions.  Those

23   questions are intended to satisfy me that you do wish to plead

24   guilty because you are, in fact, guilty and that you fully

25   understand your rights and all of the consequences of entering

L7NKKEGP

1    a plea of guilty.

2              So, first, I'm going to describe to you certain rights

3    that you have under the Constitution and the laws of the United

4    States.  You will be giving up these rights if you enter a plea

5    of guilty.  Please listen very carefully, and if you do not

6    understand something that I'm saying or describing, please stop

7    me, and either I or Mr. Cox will explain it to you more fully.

8              Will you do that?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  All right.

11             So, under the Constitution and laws of the United

12   States, you, Mr. Kegley, have a right to a speedy and a public

13   trial by a jury on the charges against you, which are contained

14   in the superseding information.

15             Do you understand that?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Do you understand that you have the right

18   to plead not guilty and to continue to plead not guilty to the

19   charge against you?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  And do you understand that if there were a

22   trial, you would be presumed innocent and the government would

23   be required to prove you guilty by competent evidence and

24   beyond a reasonable doubt?  You would not have to prove your

25   innocence at trial.

L7NKKEGP

1          Do you understand that?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  And do you understand that if there were a

4   trial, the jury, made up of 12 people selected from this

5   district, the Southern District of New York, would have to

6   agree unanimously in order to find you guilty?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And you understand that, if there were a

9   trial, you would have the right to be represented by an

10  attorney at trial and at every other stage of the proceeding,

11  and if you could not afford one, an attorney would be provided

12  to you free of cost?

13          Do you understand that?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And do you further understand that if

16  there were a trial, you would have the right to see and to hear

17  all of the witnesses against you, your attorney could

18  cross-examine those witnesses, you would have the right to have

19  your attorney object to any evidence offered by the government,

20  and Mr. Cox could offer evidence on your behalf if you so

21  desired, you would have the right to have witnesses required to

22  come to court to testify in your defense, and you would have

23  the right to testify yourself, but you would not be required to

24  testify?

25          Do you understand that?

L7NKKEGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  And do you understand that, if there were

3    a trial, and you decided not to testify, no adverse inference

4    could be drawn against you based on your decision not to

5    testify?  And by that, I mean the jury would not be allowed to

6    assume that you didn't testify because you were hiding

7    something or because you were guilty.

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  And do you understand that if you were

11    convicted at a trial, you would have a right to appeal that

12    verdict?

13         THE DEFENDANT:  I understand.

14         THE COURT:  So, Mr. Kegley, do you understand each and

15    every one of these rights that I have outlined for you?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you have any questions about them?

18         THE DEFENDANT:  No.

19         THE COURT:  Do you understand that by entering the

20    plea of guilty today, you'll be giving up each and every one of

21    these rights, you'll be waiving these rights?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And do you understand that you will also

24    be waiving any possible claim that your constitutional rights

25    may have been violated, and you will not have a trial?

L7NKKEGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Do you also understand that if you enter a

3    plea of guilty, you will have to give up your right not to

4    incriminate yourself because I will ask you, in a few minutes,

5    questions about what you did in order to satisfy myself that

6    you are guilty as charged, and you will have to admit and

7    acknowledge your guilt?

8          THE DEFENDANT:  I understand, your Honor.

9          THE COURT:  And do you understand that you can change

10   your mind right now and refuse to enter a plea of guilty?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  Do you understand that you do not have to

13   enter this plea if, for any reason, you do not wish to do so?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Mr. Kegley, you've already told me that

16   you have a copy of the information in this case and that you

17   have read it.  Is that correct?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  Did your attorney discuss that superseding

20   information with you?

21         THE DEFENDANT:  Yes, he did, your Honor.

22         THE COURT:  As I said previously, you're charged in

23   Count One of the superseding information with misbranding and

24   adulterating drugs for use in the covert doping of thoroughbred

25   racehorses; specifically, the information charges you with

L7NKKEGP

1    marketing and distributing drugs to horse trainers and

2    veterinarians to assist them to improve the horses' performance

3    and to avoid detection by federal and state drug regulators.

4                Is that your understanding?

5                THE DEFENDANT:  Yes, your Honor.

6                THE COURT:  Ms. Mortazavi, could you please state for

7    the record, and for Mr. Kegley, the elements of the offense

8    with which he has been charged in Count One of the superseding

9    information?

10               MS. MORTAZAVI:  Certainly, your Honor.

11               If this case were to proceed to trial, the government

12   would have to prove beyond a reasonable doubt that the

13   defendant was guilty of misbranding or adulterating a drug in

14   at least one way, or causing the same.  The elements of which

15   are:

16               First, that the defendant adulterated or misbranded a

17   drug in at least one way or caused another to adulterate or

18   misbrand a drug;

19               Second, that the drug was in interstate commerce or

20   was introduced into interstate commerce;

21               And, third, that the defendant had the intent to

22   defraud or mislead.

23               And, finally, the government would have to prove venue

24   by a preponderance of the evidence.

25               THE COURT:  All right.  Mr. Kegley, do you understand

L7NKKEGP

1    that the government would have to prove each and every one of

2    these elements or each part of the offense that Ms. Mortazavi

3    has just laid out with respect to Count One, and would have to

4    do so beyond a reasonable doubt at trial, with the exception of

5    venue, which only needs to be proven by a preponderance of the

6    evidence, and that would be the government's burden if you did

7    not plead guilty?

8                THE DEFENDANT:  I understand, your Honor.

9                THE COURT:  Do you understand each of those elements

10   that the government would have to prove?

11               THE DEFENDANT:  Yes, your Honor.

12               THE COURT:  Do you understand, Mr. Kegley, that the

13   maximum possible term of imprisonment for the offense in Count

14   One to which you tell me you wish to plead guilty is a term of

15   imprisonment of up to three years?

16               THE DEFENDANT:  I understand, your Honor.

17               THE COURT:  Do you understand that Count One can also

18   include a maximum term of supervised release, after you're

19   released from prison, of one year?

20               THE DEFENDANT:  Yes, your Honor.

21               THE COURT:  And do you understand that, in addition to

22   these restrictions on your liberty, the maximum possible

23   punishment for Count One also includes certain financial

24   penalties?

25               THE DEFENDANT:  I understand, your Honor.

L7NKKEGP

1          THE COURT:  And do you understand that the maximum

2     fine for the offense to which you intend to plead guilty is

3     $10,000 or twice the gross pecuniary gain related to the

4     offense or twice the loss to persons other than yourself as a

5     result of that offense, whichever is greater?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  And do you understand that there is also a

8     mandatory special assessment of $100 per count?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Do you understand that, as part of your

11     plea agreement, you have agreed to forfeit to the United States

12     a sum of money representing proceeds traceable to the

13     commission of the offenses in Count One?

14          THE DEFENDANT:  Yes, your Honor.

15          THE COURT:  And, specifically, as I read the plea

16     agreement and the proposed money judgment and order of

17     forfeiture, you have agreed to forfeit $3,310,490, representing

18     the value of the forfeitable property you obtained as a result

19     of the offense charged in Count One?

20          MR. COX:  That's correct, your Honor.  We've also

21     reached an agreement --

22          THE COURT:  Yes, yes, I will get to that in a moment.

23          THE DEFENDANT:  Yes, your Honor, I --

24          THE COURT:  You've also agreed to enter a money

25     judgment against you in that amount, correct?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

L7NKKEGP

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  And you agree and understand that a

3    judgment in that amount will be entered against you, correct?

4            THE DEFENDANT:  Yes, your Honor.

5            THE COURT:  All right.

6            Now, getting to the point Mr. Cox was making, it's the

7    Court's understanding that you and the government have also

8    agreed that provided you comply with the preliminary order of

9    forfeiture, which the government has submitted to me, you will

10    be able to pay $192,615, and that will be full satisfaction of

11    the money judgment against you representing the forfeiture

12    amount; is that correct?

13            THE DEFENDANT:  Yes, your Honor.

14            THE COURT:  That's consistent with your understanding?

15            THE DEFENDANT:  Yes, your Honor.

16            THE COURT:  Mr. Cox?

17            MR. COX:  Yes, your Honor.

18            THE COURT:  All right.  Ms. Mortazavi, have I

19    correctly stated the agreement?

20            MS. MORTAZAVI:  That's correct, your Honor.

21            THE COURT:  All right.

22            Mr. Kegley, do you understand that that forfeiture

23    amount will not reduce any fine, any restitution, any cost of

24    imprisonment, or any other penalty that the Court may impose?

25            THE DEFENDANT:  I understand, your Honor.

L7NKKEGP

1          THE COURT:  Before we proceed to entry of your plea, I

2    want to give you some information about the supervised release

3    aspect of your penalty, to be sure that you understand.

4          Supervised release means that you would be subject to

5    monitoring when you are released from prison.  Terms and

6    conditions will be imposed, and if you violate any of those set

7    terms and conditions, you could be reimprisoned without a jury

8    trial.

9          Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And if you are on supervised release and

12    do not comply with any of those set terms or conditions, you

13    could be returned to prison for up to one year, and you will be

14    given no credit for time that you served in prison as a result

15    of your sentence or for any time that you had spent on

16    postrelease supervision.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  You should also understand, Mr. Kegley,

20    that there is no parole in the federal system.  If you are

21    sentenced to prison, you will not be released early on parole.

22    There is a limited opportunity to earn credit for good

23    behavior, but you would have to serve at least 85 percent of

24    any time to which you are sentenced.

25          Do you understand that?

L7NKKEGP

1    THE DEFENDANT:  Yes, your Honor.

2    THE COURT:  And do you understand that if I accept

3    your guilty plea and adjudge you guilty, that adjudication may

4    deprive you of valuable civil rights, such as the right to

5    vote, the right to hold public office, the right to serve on a

6    jury, and the right to possess any kind of firearm, if you

7    currently have or could have obtained such rights?

8    Do you understand that?

9    THE DEFENDANT:  Yes, your Honor.

10   THE COURT:  Now, you've told me that you are a United

11   States citizen.  I accept that representation, but I want to

12   confirm, as well, that you understand that if you are not a

13   United States citizen, and I accept your plea of guilty, there

14   could be adverse effects on your immigration status.

15   Have you discussed your immigration status and the

16   possible consequences of any plea with your attorney?

17   THE DEFENDANT:  Yes, your Honor.

18   THE COURT:  Under current law, there are sentencing

19   guidelines that I have to consider in determining your

20   sentence.

21   Have you spoken with Mr. Cox about the sentencing

22   guidelines?

23   THE DEFENDANT:  I have, your Honor.

24   THE COURT:  And you understand that these guidelines

25   are in place and generally how they operate?

L7NKKEGP

1        THE DEFENDANT:  Yes, your Honor.

2        THE COURT:  Do you also understand that in addition to

3   considering the sentencing guidelines, in imposing a sentence,

4   I must consider various additional factors that are laid out in

5   a statute, Title 18, United States Code, Section 3553?

6        Do you understand that?

7        THE DEFENDANT:  Yes, your Honor.

8        THE COURT:  Have you discussed the 3553 factors with

9   Mr. Cox?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  Do you understand that the Court has

12   discretion, while taking the sentencing guidelines into

13   account, to sentence you to any period of imprisonment up to

14   three years, if you plead guilty to the offense in the

15   superseding information?

16        THE DEFENDANT:  Yes, your Honor.

17        THE COURT:  Do you understand that even though the

18   plea agreement includes a stipulated or agreed-upon sentencing

19   guidelines calculation, I cannot determine what your sentence

20   will be until after a presentence report is prepared by the

21   probation department, and you and the government, and obviously

22   your lawyer, Mr. Cox, have an opportunity to review that

23   document and to challenge any of the facts that are reported to

24   the Court by the probation department?

25        Do you understand that?

L7NKKEGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  I want to talk to you about some of the

3    provisions in your plea agreement.

4          According to that agreement, on pages 2 and 3, you've

5    agreed that the appropriate guidelines range for the offense in

6    Count One, to which you intend to plead guilty, is 30 to

7    36 months, and that the applicable fine range in your case is

8    $10,000 to $100,000.  Is that correct?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Do you understand that that stipulation

11    does not bind the Court, and it doesn't bind the probation

12    department, as to the facts on which it is based, how to apply

13    the guidelines to the facts, or as to what an appropriate

14    sentence will be in your case?

15          Do you understand that?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Do you understand that I may decide to

18    impose a sentence outside the guidelines range?

19          THE DEFENDANT:  I understand, your Honor.

20          THE COURT:  Do you understand that if your attorney or

21    anyone else has attempted to estimate or predict for you what

22    your sentence will be, that estimate could be wrong?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  No one — not even your attorney, nor the

25    government — can or should give you any assurance of what your

L7NKKEGP

1    sentence will be since, as I just said, that sentence cannot be

2    determined until after the probation report is completed and I

3    rule on any challenges to the report and I determine what an

4    appropriate sentence is under the law.

5            Do you understand that?

6            THE DEFENDANT:  Yes, your Honor.

7            THE COURT:  And do you understand that even if your

8    sentence is different from what your attorney or anyone else

9    has told you it might be, or if it's different than what you

10   expect or you might hope it to be, if you're surprised or

11   disappointed by your sentence, if you plead guilty today, you

12   will be bound to your guilty plea, and you will not be allowed

13   to withdraw your plea at the time of sentencing?

14           Do you understand that?

15           THE DEFENDANT:  Yes, your Honor.

16           THE COURT:  And do you understand that even if the

17   government doesn't oppose or take a position on what your

18   attorney will ask me to impose as your sentence, I'm obligated

19   to impose the sentence that I believe is appropriate under the

20   circumstances and the applicable law, and you will not have a

21   right to withdraw your plea of guilty?

22           Do you understand that?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  And do you understand that you may have

25   the right to appeal your sentence under certain circumstances,

L7NKKEGP

1    even if your plea agreement provides that you are waiving your

2    right to appeal in certain circumstances?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  Are you now serving any federal or state

5    sentence, Mr. Kegley?

6              THE DEFENDANT:  No, your Honor.

7              THE COURT:  Are you being prosecuted for any other

8    crime, aside from the one we're talking about today?

9              THE DEFENDANT:  No, your Honor.

10             THE COURT:  As I said previously to you, I have a copy

11   of the plea agreement.  I will annotate it as we previously

12   discussed, but I will receive a copy that's revised to reflect

13   the three issues that we talked about.

14             You told me -- well, I don't think you have told me.

15   Do you have a copy of it in front of you, Mr. Kegley?

16             THE DEFENDANT:  Yes, your Honor.

17             THE COURT:  Is that your signature on page 6 of that

18   document?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  Did you discuss this letter agreement with

21   Mr. Cox before you signed it?

22             THE DEFENDANT:  I did, your Honor.

23             THE COURT:  Did Mr. Cox explain to you all of the

24   terms and conditions of the agreement?

25             THE DEFENDANT:  Yes, your Honor.

L7NKKEGP

1          THE COURT:  Did you fully understand the agreement

2     before you signed it?

3          THE DEFENDANT:  I did, your Honor.

4          THE COURT:  And, Mr. Cox, is that your signature

5     beneath Mr. Kegley's on page 6 of this plea agreement?

6          MR. COX:  Yes, your Honor.

7          THE COURT:  And, Ms. Mortazavi, is that Mr. Adams'

8     signature, to the best of your knowledge?

9          MS. MORTAZAVI:  Yes, your Honor, I understand that he

10    signed it, as well as the chief of our unit.

11         THE COURT:  The chief of your unit, it appears to be

12    an electronic signature on the copy I have, right?

13         MS. MORTAZAVI:  That's correct.  He authorized that

14    electronic signature.

15         THE COURT:  All right.

16         And just for the record, this is a letter dated

17    July 14, 2021, on the letterhead of the United States

18    Department of Justice, United States Attorney for the Southern

19    District of New York, addressed to Scott Cox and Michael

20    Mazzoli, and it is a six-page document signed, as we've just

21    discussed.

22         Mr. Kegley, do you understand that your plea agreement

23    provides, on page 4, that you are giving up, or waiving, your

24    right to appeal or to litigate or to challenge your sentence

25    under Title 28, United States Code, Section 2255 and/or 2241 if

L7NKKEGP

I sentence you within or below the guidelines range set forth

in the agreement?

        THE DEFENDANT:  I understand, your Honor.

        THE COURT:  Do you understand that you're under no

obligation to waive your right to appeal or to litigate your

sentence?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you understand that the plea agreement

further provides, on pages 4 and 5, that you're waiving any

right to appeal or attack your conviction on the basis that the

government hasn't provided discovery materials, exculpatory

materials, except any information that might establish factual

innocence or any material to impeach the government's witnesses

against you?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you understand that you're under no

obligation to waive those rights?

        THE DEFENDANT:  Yes, your Honor.

        THE COURT:  Do you understand that you have agreed in

this document, on page 3, that you will not move for a downward

departure under the sentencing guidelines or seek any

adjustment under the guidelines that is not described in the

plea agreement, but that you may make arguments for a lower

sentence under the general sentencing statute that I discussed

with you, Section 3553(a)?

L7NKKEGP

1          Is that consistent with your understanding?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  Do you understand that you're under no

4     obligation to enter into any such agreement?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And do you further understand that your

7     plea agreement provides, on page 5, that you're waiving any

8     challenge to your guilty plea, conviction, or sentence based on

9     any potential immigration consequences of your plea, regardless

10    of any advice that you may have received regarding those

11    immigration consequences from your attorney?

12         THE DEFENDANT:  I understand, your Honor.

13         THE COURT:  Do you understand that you're under no

14    obligation to waive or to make this waiver?

15         THE DEFENDANT:  Yes, your Honor.

16         THE COURT:  Does Government Exhibit 1, the plea

17    agreement, accurately reflect your complete and total

18    understanding of the entire agreement between you, the

19    government, and Mr. Cox as well?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Is everything you understand about your

22    plea and your sentence to date covered in this agreement?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Is anything left out?

25         THE DEFENDANT:  No, your Honor.

L7NKKEGP

1          THE COURT:  Do you have any questions that you'd like

2     to address to the Court or to Mr. Cox at this time about the

3     agreement?

4          THE DEFENDANT:  I do not, your Honor.

5          THE COURT:  All right.

6          Apart from what's contained in this plea agreement,

7     have any promises been made to you in order to get you to plead

8     guilty?

9          THE DEFENDANT:  No, your Honor.

10          THE COURT:  Has anyone threatened you or used any kind

11     of force to get you to plead guilty?

12          THE DEFENDANT:  No, your Honor.

13          THE COURT:  Knowing all of what we just discussed, do

14     you still wish to plead guilty pursuant to this plea agreement

15     to Count One of the superseding information?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  Mr. Cox, do you know of any valid reason

18     why your client would prevail at trial or should not be

19     permitted to plead guilty at this time?

20          MR. COX:  No, your Honor.

21          THE COURT:  Mr. Kegley, at this time, I would like

22     you, please, to tell me what you did that makes you guilty of

23     the offense charged in Count One of the superseding

24     information, specifically what you did, when you did it, with

25     whom you did it, where you did it.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

L7NKKEGP

1          THE DEFENDANT:  Yes, your Honor.

2          Beginning in 2016, I was an independent contractor for

3   a company, Medivet Equine.  We sold a variety of products,

4   including SGF-1000.  I sold these products to veterinarians,

5   horse trainers, and when I did that, I knew that there was no

6   medical prescription for those products.  I also at the time

7   knew that the product was not manufactured in an FDA-approved

8   facility, nor was it approved for sale by the FDA.

9          THE COURT:  Have you completed your statement to me?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Did you know that the horse trainers

12   intended to use these products on thoroughbred racehorses?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Did you know that these products were

15   going to be used in such a way, that it would be difficult or

16   impossible for federal or state regulators to detect the

17   products?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Were the products either shipped in

20   interstate commerce or put into the stream of interstate

21   commerce?

22          THE DEFENDANT:  They were, your Honor.

23          THE COURT:  So, some of the trainers or vets with whom

24   you dealt were located in states other than where you were

25   located?

L7NKKEGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  When you did what you've just described to

3   me, did you know that what you were doing was wrong and

4   illegal?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  And you understood that part of the use of

7   those products was going to be to, basically, defraud or

8   mislead the regulators, correct?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  Ms. Mortazavi, is there anything further

11  that you wish for me to address with Mr. Kegley?

12         MS. MORTAZAVI:  Nothing further, your Honor.  I would

13  proffer that some of the customers were located in the Southern

14  District of New York and received the product, SGF-1000, in the

15  Southern District of New York.

16         THE COURT:  Is that accurate, Mr. Kegley?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Did you know the confines of the Southern

19  District of New York?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Okay.  All right.

22         So, Ms. Mortazavi, at this time, would you please

23  summarize for me the evidence that the government would proffer

24  against Mr. Kegley if the case were to go to trial?

25         MS. MORTAZAVI:  Certainly, your Honor.

1          Some of the evidence that the government would seek to

2    introduce at trial, were we were to proceed to trial, against

3    Mr. Kegley include:  Lay and expert testimony that the drugs

4    Mr. Kegley sold, including SGF-1000, was not approved by the

5    FDA, was mislabeled, was distributed without any valid

6    prescriptions, and that the manufacturer was not registered as

7    a drug manufacturer with the FDA.

8          We would also seek to introduce evidence of online

9    marketing videos promoting SGF-1000 and other drugs sold by the

10   manufacturer that employed Mr. Kegley; Title 3 wire intercepts

11   of Mr. Kegley and his codefendants discussing SGF-1000,

12   including discussing relabeling the product once there was

13   increased law enforcement and regulatory scrutiny of the

14   legality of SGF-1000; archived web pages from the manufacturer

15   advertising SGF-1000 with promotional materials stating that it

16   contained multiple growth factors and that it acted as a

17   vasodilator, including later versions of these same web pages

18   where these allegations were removed after there was increased

19   scrutiny of SGF-1000 and the description of the drug was

20   altered to state that it was homeopathic; proof of shipments of

21   SGF-1000 into the United States from overseas into a

22   distribution center in Kentucky and outgoing shipping records

23   showing shipments of SGF-1000 across the United States,

24   including into the Southern District of New York.

25          We'd also seek to introduce proof of controlled

L7NKKEGP

1    purchases of SGF-1000 from Mr. Kegley directly and from the

2    manufacturer, which include the physical bottles of SGF-1000,

3    which were labeled in simple recordings and promotional

4    materials prepared by the company.

5              THE COURT:  Have you concluded?

6              MS. MORTAZAVI:  Yes, your Honor.

7              THE COURT:  All right.

8              Mr. Kegley, at this point, now that we've discussed

9    the plea agreement, the evidence against you, possible

10   penalties of the crime to which you're pleading guilty, we are

11   prepared to turn to your plea.

12             Are you prepared to proceed at this time?

13             THE DEFENDANT:  I am, your Honor.

14             THE COURT:  All right, then.

15             Mr. Kegley, how do you plead to Count One of the

16   superseding information charging you with drug adulteration and

17   misbranding with intent to defraud or mislead?

18             THE DEFENDANT:  Guilty, your Honor.

19             THE COURT:  Are you pleading guilty because you are,

20   in fact, guilty?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Are you pleading guilty voluntarily?

23             THE DEFENDANT:  I am, your Honor.

24             THE COURT:  And are you doing so of your own free

25   will?

L7NKKEGP

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Mr. Cox, are there any other questions

3    that you believe I should put to Mr. Kegley in connection with

4    his plea?

5          MR. COX:  No, your Honor.  I believe you've satisfied

6    Rule 11.

7          THE COURT:  All right.

8          Ms. Mortazavi?

9          MS. MORTAZAVI:  Nothing further, your Honor.

10         THE COURT:  All right.

11         Mr. Kegley, then, you have acknowledged in open

12   proceedings that you are, in fact, guilty as charged in Count

13   One of the superseding information.  Because I'm satisfied that

14   you know your rights, including your right to go to trial, and

15   that you are waiving them voluntarily, and that you are aware

16   of the consequences of your plea, including the sentence that

17   may be imposed, I find that your plea is entered knowingly and

18   voluntarily and is supported by independent basis in fact

19   containing each of the essential elements of the offense.  I

20   accept your plea of guilty, and I enter a judgment of guilty on

21   Count One of the superseding information charging you with drug

22   adulteration and misbranding with the intent to defraud or

23   mislead.

24         Now, Mr. Kegley, I want to talk to you about the next

25   steps in this process going forward.  As I mentioned earlier,

L7NKKEGP

1    the probation department will prepare a report for me, a

2    presentence report, and that report will assist me in

3    understanding you better, getting to know you better,

4    understanding what happened here.  You will be interviewed by

5    the probation office in connection with preparation of that

6    report.  It's very important that the information that you give

7    the probation officer be truthful and accurate.  As I say, that

8    report will be important to me in my decision as to what an

9    appropriate sentence is.  You, your attorney, the government,

10   will have an opportunity to examine that report, to challenge

11   it, to comment upon it, and you will have the opportunity to

12   speak at the time of sentencing.

13            Is there any reason, in the opinion of counsel for

14   either side, why I should not direct preparation of a

15   presentence report at this time?

16            MS. MORTAZAVI:  No, your Honor.

17            MR. COX:  No, your Honor.

18            THE COURT:  All right.

19            Does defense counsel wish to be present for any

20   interview in connection with the report?

21            MR. COX:  I do, your Honor.

22            THE COURT:  I, therefore, order that no interview take

23   place unless Mr. Cox, Mr. Kegley's counsel, is present with

24   him.

25            Are you available, Mr. Cox and Mr. Kegley, to meet

L7NKKEGP

1    with the probation office over the next two weeks?

2                    MR. COX:  Yes, your Honor.

3                    THE COURT:  All right.

4                    Mr. Cox, would you please be in touch with the

5    probation office, then, to arrange for that interview?

6                    MR. COX:  I will, your Honor.

7                    THE COURT:  And once a presentence report is received,

8    obviously, it's important that counsel for both sides give

9    timely comments or objections to the probation office.

10   Courtesy copies of sentencing submissions must be provided to

11   chambers.  Defense submissions will be due two weeks before the

12   date of sentencing; government submissions one week before the

13   date of sentencing.

14                   Ms. Mortazavi, I remind you to please provide to

15   probation, within two weeks, the relevant factual background,

16   and, as I say, Mr. Cox, please reach out to probation to set up

17   an interview within the next two weeks.

18                   MR. COX:  Yes, ma'am.

19                   MS. MORTAZAVI:  Yes, your Honor.

20                   THE COURT:  Let me just pull out my calendar, and we

21   can look at potential dates for sentencing.

22                   The Court has availability on November 22nd.  Does

23   that work?

24                   MR. COX:  That is wide open for the defense.

25                   MS. MORTAZAVI:  And that works for the government as

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    well.

2             THE COURT:  All right.  Then let's set sentencing for

3    November 22nd.

4             Mr. Kegley, I just remind you, before we close, that

5    it is very important that you be as forthcoming as possible

6    with the probation department.  Failure to be truthful with

7    probation and, frankly, with the Court could have an adverse

8    effect on your sentence, and it could, frankly, subject you to

9    further prosecution.  So, specifically, the Court reserves the

10   right to deny you a two-level reduction for acceptance of

11   responsibility, which has been stipulated to under the

12   guidelines, if you do not fully cooperate with probation in

13   connection with preparation of the sentencing report.

14            Is there anything further that we should talk about

15   before we adjourn?

16            Mr. Cox?

17            MR. COX:  Your Honor, I apologize, I just didn't hear

18   a time for the 22nd of November.

19            THE COURT:  Ms. Dempsey?

20            THE DEPUTY CLERK:  10:00 a.m., your Honor.

21            THE COURT:  Does that work?

22            MR. COX:  Yes, your Honor.  Thank you, Judge.

23            THE COURT:  Ms. Mortazavi?

24            MS. MORTAZAVI:  Yes, your Honor.  Thank you.

25            THE COURT:  All right.  Thank you.

L7NKKEGP

1          Is there anything further, Ms. Mortazavi, that you

2    believe we can accomplish today?

3          MS. MORTAZAVI:  Nothing further from the government.

4    Thank you.

5          THE COURT:  All right.

6          Thank you, then.

7          And I thank our court reporter, Mr. Walker, very much,

8    and thank you for your patience, Mr. Walker, when we took the

9    brief adjournment.

10          We stand adjourned.  Have a good rest of the day and

11    please be safe, everyone.

12                              *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25